IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      v.                                                                                              19-CR-6140FPG

PATRICK W. CARLINEO, JR.,

      Defendant.

---

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Brett A. Harvey, Assistant United States Attorney, hereby makes and files its sentencing memorandum relating to the defendant, PATRICK W. CARLINEO, JR.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  PROCEDURAL HISTORY**

On April 4, 2019, the defendant, PATRICK W. CARLINEO, JR., was charged by sealed Criminal Complaint No. 19-MJ-4052 with threatening a United States official, in violation of 18 U.S.C. § 115(a)(1)(B). The complaint resulted from an incident on March 21, 2019, where the defendant called the Washington, D.C. offices of Congresswoman Ilhan Omar, a representative from the 5th Congressional District in Minnesota, and threatened to assault and murder her.

On April 5, 2019, special agents of the Federal Bureau of Investigation (FBI) arrested the defendant at his residence at 6480 County Route 21 in Addison, New York. At that time, the FBI also executed a search warrant and recovered, among other things, a handgun, five

long guns, and hundreds of rounds of ammunition. The defendant is prohibited from possessing firearms and ammunition by virtue of his prior felony conviction for Criminal Mischief 2° from 1998.

On November 18, 2019, the defendant waived Indictment and pleaded guilty, pursuant to a written plea agreement, to a two-count Information charging him with threatening to assault and murder a United States official, in violation of 18 U.S.C. § 115(a)(1)(B), and felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). The plea agreement executed by the parties determined the defendant's advisory Sentencing Guidelines range to be 12 to 18 months' imprisonment. The Pre-Sentence Report (PSR) (revised February 28, 2020) calculated the applicable Sentencing Guidelines range to be 21 to 27 months' imprisonment. In the plea agreement, both parties reserved the right to argue for a sentence outside the applicable Sentencing Guidelines range.

On February 7, 2020, the government filed a "Statement With Respect to Sentencing Factors," in which the government advocated for the Sentencing Guidelines calculations and sentencing range (12 to 18 months' imprisonment) set forth in the plea agreement.

B.  **SUMMARY OF OFFENSES AND RELEVANT CONDUCT**[1]

The facts and circumstances of the offense of conviction are set forth in detail in the factual basis of the plea agreement and the PSR. Briefly, the defendant admitted to placing a telephone call to the Washington, D.C. offices of Congresswoman Omar on March 21, 2019.

---

[1] The plea agreement and PSR contain detailed summaries of the defendant's offenses of conviction and relevant conduct.

PSR at ¶ 28. During the ensuing conversation with a staff member, the defendant asked if the staff member worked for the Muslim Brotherhood, called Congresswoman Omar "a fucking terrorist," and threatened to "put a bullet in her fucking skull." PSR at ¶ 28. The defendant – who characterized himself as a patriot – made the menacing telephone call because he hates individuals he views as radical Muslims being in the United States government. PSR at ¶ 32. The defendant also believed that Congresswoman Omar supported Hamas and the Muslim Brotherhood, and that her election to Congress was illegitimate. PSR at ¶ 32. After receiving the call from the defendant, Congresswoman Omar's staff referred the threat to the United States Capitol Police, Threat Assessment Section, who initiated an investigation of the case in coordination with the FBI (Corning Resident Agency).

The defendant – a convicted felon – also admitted to illegally possessing a .45 caliber handgun, five long guns, and hundreds of rounds of ammunition at his home on April 5, 2019. PSR at ¶¶ 35 and 37.

## II.   STATUTORY SENTENCING FACTORS

On March 2, 2020, the defendant filed a sentencing memorandum in which he requests a non-Guidelines sentence of time served, a term of supervised release and community service. Defense Sentencing Statement, dated March 2, 2020, at p. 27. The government opposes the defendant's request for a below-Guidelines sentence and asks the Court to impose a sentence within the range of 12 to 18 months' imprisonment, as set forth in the plea agreement. The government submits that such a sentence is appropriate and would not be "greater than necessary" to comply with the objectives set forth in Title 18, United States Code, Section 3553(a) (hereinafter, "Section 3553(a)").

Section 3553(a) requires that the Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, the Court must consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

. . .

(5) any pertinent policy statement–

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet

4

>to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
>>(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). This range is "the starting point and the initial benchmark." *Id.* Although this Court must treat the Guidelines as advisory, *United States v. Ratoballi*, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guidelines range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. *United States v. Selioutsky*, 409 F.3d 114, 118 (2d Cir. 2005). Further, while this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States*, 551 U.S. 338, 351 (2007), the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). *See also United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50. In determining whether the section 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." *Id.* at 50. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (citing *Rita*, 551 U.S. at 351). Although this Court need not engage in "robotic incantations" with respect to its consideration of the section 3553(a) factors, *Fernandez*, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356.

The factors set forth in section 3553(a) weigh in favor of a sentence between 12 and 18 months' imprisonment for this defendant. The crimes committed by the defendant – threatening to kill a United States official and illegally possessing firearms – are very serious. He explicitly threatened a duly elected representative with violence and death for simply

carrying out the responsibilities of her job. The defendant chose to express his disagreement with Congresswoman Omar and her political views, and his anger about her election to Congress, by trying to intimidate, frighten and harass her. The use of threats of violence to voice opposition to an elected official – by this defendant or any other citizen of this country – must not be tolerated and should be appropriately punished.

In addition, the defendant illegally possessed six firearms and hundreds of rounds of ammunition at the time of his arrest. When he was interviewed by the FBI on March 29, 2019, the defendant admitted that he possessed a shotgun and .22 caliber rifle, but failed to mention his handgun or the other long guns stored at his residence. While there is no indication that the defendant intended to use these weapons to carry out his threat to shoot Congresswoman Omar in the head, it is troubling that the defendant – who, in addition to this case, has other criminal convictions involving threatening and/or harassing behavior (as detailed below) – possessed a cache of firearms and ammunition.

Although he is a Criminal History Category I, the defendant has a criminal history dating back to 1981. His adult felony conviction occurred in 1998,[2] but it is notable that such conviction involved harassing and threatening telephone calls made by the defendant to a female, which ended with the defendant destroying a boat and trailer belonging to the female by arson. PSR at ¶ 69. The defendant initially received a sentence of probation for that conviction, but violated probation three times[3] and was ultimately re-sentenced to one year

---

2 The defendant also has a Burglary 3° conviction, as a Youthful Offender, from 1981.

3 As detailed in the PSR, the defendant failed to complete a court-ordered domestic violence program because, during group sessions, he was "angry," "verbally aggressive," "sarcas[tic]," and "demeaning" (PSR at ¶¶ 69 and 110).

in jail. The defendant also has an Aggravated Harassment 2° conviction from 2000, which involved harassing telephone calls made by the defendant to his ex-wife. PSR at ¶ 70. While these convictions are from some time ago, it is apparent that – more than 20 years later – the defendant (who is now 56 years old) has failed to learn or chosen to disregard a simple lesson: that making harassing and threatening telephone calls is an unacceptable way to deal with frustration, rage and resentment.

Based on an analysis of the section 3553(a) factors, a sentence between 12 and 18 months' imprisonment would be just and appropriate. Such a sentence adequately accounts for the nature and circumstances of the offenses of conviction, the criminal history and personal characteristics of the defendant, the seriousness of the offenses of conviction, and the need to protect the public from further crimes by the defendant. In addition, such a sentence would promote respect for the law and deter the defendant, and others in this District and elsewhere in the United States, from expressing their political disagreement with elected officials through threats of violence and death. It is critical for this Court's sentence to send a clear message to the defendant and others that threatening violence to public officials for their political views will not be tolerated and will result in prison time. The government submits that a sentence of time-served – as requested by the defendant – would trivialize the defendant's conduct and provide little, if any, general deterrence.

As noted in the PSR, Congresswoman Omar has submitted a victim impact letter to the Court in which she requested that this Court not impose a "severe prison sentence" in this case. PSR at ¶ 39. The government submits that a sentence between 12 and 18 months' imprisonment is consistent with Congresswoman Omar's request. For the reasons set forth

herein, such a sentence – while certainly substantial – could not be fairly characterized as severe or unduly harsh.

### III. CONCLUSION

Based on the foregoing, the government respectfully recommends that the Court impose a sentence between 12 and 18 months' imprisonment.

DATED: Rochester, New York, March 4, 2020.

Respectfully submitted,

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY: s/BRETT A. HARVEY
Assistant U.S. Attorney
Western District of New York
100 State Street, Suite 500
Rochester, New York
(585) 399-3949
brett.harvey@usdoj.gov

TO: Sonya A. Zoghlin, Esq.
Counsel for Defendant

United States Probation Department
Attn: Erin N. Wong
U.S. Probation Officer