UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 19-CR-6140-FPG

DECISION AND ORDER

PATRICK W. CARLINEO, JR.,
                      Defendant.

## INTRODUCTION

Defendant Patrick W. Carlineo, Jr. moves to vacate the special condition of release imposed by the Court at sentencing on March 6, 2020. ECF No. 49. For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

On November 18, 2019, Defendant was charged by way of Information with one count of threating a United States official in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4) and one count of being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 29. On November 19, 2020, Defendant entered a plea of guilty as to both counts and executed a plea agreement. ECF Nos. 30, 31.

Specifically, Defendant admitted during the colloquy that he had called the office of United States Congresswoman Ilhan Omar and asked a staff member "[d]o you work for the Muslim Brotherhood? Why are you working for her, she's a fucking terrorist." ECF No. 55 at 9. Defendant then admitted to saying, "somebody ought to put a bullet in her skull. Our forefathers would have put a bullet in her skull." *Id.* During a later FBI interview, Defendant stated that "he hates

individuals he views as radical Muslims being in the United States Government," and believed Congresswoman Omar to be a member of radical Muslim terrorist groups. *Id.* at 28.

On March 6, 2020, the Court sentenced Defendant to a term of imprisonment of one year and one day, followed by a three-year period of supervised release. As part of that term of supervised release, the Court imposed a special condition requiring Defendant to participate in the Partners in Restorative Initiatives restorative justice program, in accordance with a letter sent from that program to the Court that was provided to counsel for all parties prior to sentencing. *See* ECF No. 47. Defendant now moves to vacate this special condition (ECF No. 49), arguing that it is too vague and unrelated to the crime for which he was sentenced.

## DISCUSSION

"A district court retains wide latitude in imposing conditions of supervised release," *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). "A district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). Specifically,

> [a] sentencing court may impose special conditions that are reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to afford adequate deterrence to criminal conduct"; "the need to protect the public from further crimes of the defendant"; and "the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," and which "involve no greater deprivation of liberty than is reasonably necessary" for these purposes. U.S.S.G. § 5D1.3(b); *see also United States v. Myers*, 426 F.3d 117, 123-25 (2d Cir. 2005).

*Id.*

Here, the Court made the requisite individualized assessment on the record when imposing the special condition that Defendant "participate in the Partners in Restorative Initiatives

program," which "attempts to bring victims of crime and offenders together." ECF No. 56 at 37. In imposing the special condition, the Court referenced the letter provided to counsel describing the program. The Court indicated that Defendant's participation

> could include a sentencing circle, which would involve talking about this type of activity, the impact that it has both from the victim and from the offender. A listening circle as well, and in that case the defendant must participate in that program. If Representative Omar is willing to participate, she can participate or have a representative participate in that. But part of that the defendant would need to listen to stories about Muslim refugees or people who had suffered from violence from being Muslim.
>
> In addition to listening to stories, he would be required to learn about the Muslim faith and its history, possibly at a mosque or Islamic center. If the listening circle is used, it would be patterned after the sentencing circle.

*Id.* at 37-38.

In imposing the special condition, the Court indicated "I think education in this case is going to be helpful to the defendant." *Id.* at 38. The Court made such a finding because although it declined to assess a level three upward adjustment based on the premise that Defendant targeted Congresswoman Omar based on her religion, the Court clearly articulated that it was "concerned about the use of the word Muslim" in Defendant's threats. *Id.* at 8. To be sure, Defendant admitted to hating radical Muslim terrorists and believed that Congresswoman Omar was one. ECF No. 55 at 9, 28.

The Court was specifically concerned with Defendant's use of disrespectful and hateful language as part of the threat. The Court explained, [e]verybody in this country has a right to their political beliefs. You do, I do, everybody does. But there's a line in the sand when people are willing to threaten other people or use violence against other people because of their political beliefs." *Id.* at 30. The Court further explained, "[y]ou can't just say, well, I lost my cool, I didn't mean it and I'm sorry I did it. Because the message has to go out to people that there are

consequences for acts like this and we have to take it seriously and it has to stop somewhere." *Id.* at 31. Indeed, Defendant acknowledged that he was "trying to think things out before just blurting something out that could be hurtful." *Id.* at 22. He vowed to be "more conscious of what I say and certainly to be more respectful." *Id.* at 24. As articulated at sentencing and above, the special condition imposed by the Court seeks to educate Defendant and deter similar future conduct. It is therefore well within the Court's broad discretion to impose.

Finally, contrary to Defendant's argument otherwise, the special condition is neither vague nor a delegation of the Court's sentencing authority. The judgment clearly indicates that Defendant is required to participate in the restorative justice program, much like defendants are often required to participate in substance abuse programs. There is nothing vague about this. Nor does participation in the program delegate to the United States Probation Office any "decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Cf. United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). "In other words, the extensive supervision mission of federal probation officers includes execut[ing] the sentence . . .but not imposing it." *Id.* (quoting another source). As required, the special condition here requires only that Probation execute the Court's sentence.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate the Special Condition of Supervised Release (ECF No. 49) is DENIED.

IT IS SO ORDERED.

Dated: April 7, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court